**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-09-0672 |
| § | |
| CORNERSTONE MORTGAGE § | |
| COMPANY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Lehman Brothers Holdings, Inc. ("Lehman") sued Cornerstone Mortgage Company over eleven mortgage loans sold to Lehman Brothers Bank ("LBB") and subsequently assigned to Lehman. In an amended complaint, filed after Cornerstone moved for a more definite statement, Lehman alleges that Cornerstone purchased these loans under a Loan Purchase Agreement and an incorporated Seller's Guide issued by a Lehman agent, Aurora Loan Services LLC. (Docket Entry No. 16 at ¶¶ 3, 10). Lehman alleges that as to each of these eleven loans, Cornerstone breached the contractual representations, warranties, and covenants contained in the Agreement and Seller's Guide, including the obligation to repurchase the mortgage loans, or in the alternative, to indemnify, Lehman for all losses, expenses, costs, and attorney's fees associated with the loans. (*Id.,* ¶ 3, 14). Lehman seeks damages for breach of contract and breach of express warranty, or an order compelling specific performance of the obligation to repurchase the loans or damages for any loans for which repurchase is not viable or provides incomplete relief. (*Id.*).

Cornerstone has answered and counterclaimed for attorneys' fees under the Texas Civil Practice and Remedies Code. (Docket Entry No. 17 at ¶ 64). Lehman has moved to dismiss

Cornerstone's counterclaim, (Docket Entry No. 22), and Cornerstone has responded, (Docket Entry No. 26).

Based on the pleadings, the motion and response, and the applicable law, this court grants Lehman's motion to dismiss. For the reasons explained below, Cornerstone's counterclaim is dismissed with leave to amend no later than **September 25, 2009**.

**I.     The Allegations in Lehman's Amended Complaint and Cornerstone's Counterclaim**

Lehman is a Delaware corporation with its principal place of business in New York. (Docket Entry No. 16 at ¶ 4). Lehman is the corporate parent of LBB, a bank that, as part of its business, buys and sells mortgage loans in the secondary mortgage market. When LBB purchases a mortgage loan, it assigns the loan to Lehman. (*Id.* at ¶ 8).

Cornerstone is a mortgage lender incorporated under Texas law and principally operating out of Houston. (*Id.* at ¶¶ 5, 9; Docket Entry No. 17 at ¶¶ 5, 9). Cornerstone sells at least some of its mortgage loans to investors in the secondary mortgage market. (*Id.*). The secondary mortgage market consists of transactions in which financial institutions purchase mortgage loans from loan originators and agree to service the loans, inheriting both the right to receive the borrowers' mortgage payments and the risk of default.

Lehman alleges that LBB and Cornerstone executed the Loan Purchase Agreement on December 31, 2004. Lehman attached a copy of the December 31, 2004 Loan Purchase Agreement to its motion to dismiss Cornerstone's counterclaim.[1] (Docket Entry No. 22, Ex. 1). The Agreement states that "from time to time," Cornerstone desires to sell, and Lehman to buy, residential mortgage loans, to be conveyed under the Aurora Loan Services Inc. Seller's Guide. (*Id.*). The December 31,

---

[1]   Under Fifth Circuit law, this court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are "central to the claim." *Kane Enterprises v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

2004 Agreement contains a choice-of-law provision specifying that New York law applies in construing the Agreement and Seller's Guide and in determining the "obligations, rights, and remedies of the parties," unless preempted by federal law. (*Id.*). The Agreement incorporates by reference "the terms and provisions of the Seller's Guide" created by Aurora Loan Services, Inc., Lehman's loan-servicing agent.[2] (*Id.*)

For each of the eleven loans, Lehman has alleged breach of the representations, warranties, and covenants contained in Purchase Agreement and Seller's Guide. With respect to the loans numbered 1 and 2 in its amended complaint,[3] Lehman claims that Cornerstone misrepresented the value of the properties. (Docket Entry No. 16 at ¶ 19). As to loans numbered 3 and 4,[4] Lehman claims that Cornerstone failed to address or disclose material discrepancies, misleading Lehman into believing that Cornerstone had originated no-document loans. Lehman alleges that, had Cornerstone disclosed the borrower's written application, LBB would have discovered that the borrower did not qualify for LBB's debt-to-income ratio requirements. (*Id.* at ¶ 20). For loans 5 and 6,[5] Lehman alleges that Cornerstone breached the Seller's Guide by submitting documents in which the mortgage borrower was represented as a second-time home buyer when she was in fact a first-time buyer. (*Id.* at ¶ 21). With respect to loans 7, 8, and 9,[6] Lehman alleges that Cornerstone breached

---

[2]   There is some confusion in the pleadings as to the proper name of Aurora Loan Services. Lehman referred to it as Aurora Loan Services, LLC and Cornerstone clarified that entity's name is Aurora Loan Services, Inc., which is the name reflected in the December 31, 2004 Agreement.

[3]   Secured by property at 2506 Steamboat Springs St., Loveland, Colorado 80538, with a combined principal amount of $256,500. (Docket Entry No. 16, Ex. A).

[4]   Secured by property at 4501 Corner Brook Lane, Fort Worth, Texas  76123, with a combined principal amount of $183,370. (Docket Entry No. 16, Ex. A).

[5]   Secured by property at 5551 West 29th St. #4014, Greenley, Colorado 80634, with a combined principal amount of $175,900. (Docket Entry No. 16, Ex. A).

[6]    Loans 7 and 8 are secured by  property located at 4223 Arcady Avenue, Highland Park, Texas 75205, with a combined principal amount of $2.6 million. Loan 9 is secured by property located at 22 Dover Drive, Conroe, Texas

the early-default provision in the Seller's Guide by failing or refusing to repurchase the loans after the borrower defaulted on an early payment.[7] (*Id.* at ¶ 22). As to loan 10,[8] Lehman claims that Cornerstone misrepresented the assets and liabilities of the borrower, as well as the borrower's intentions to occupy the property as a primary residence. (*Id.* at ¶ 23). With respect to loan 11,[9] Lehman contends that Cornerstone breached a provision in the Seller's Guide by providing documents listing an interest-rate floor inconsistent with the interest-rate floor shown on a rider to the mortgage. (*Id.* at ¶ 24).

In its amended complaint, Lehman asserted claims for breach of contract and breach of express warranty, seeking money damages, indemnification, and, if legal remedies were to prove insufficient, specific performance. (Docket Entry No. 16). Cornerstone answered and counterclaimed under the Texas statutory provision making attorney's fees available to parties who prevail on a breach of contract claim. (Docket Entry No. 17). Cornerstone did not assert a separate counterclaim for breach of contract. Cornerstone did assert as an affirmative defense "breach of contract by [Lehman] in not providing required notice to [Cornerstone] of the allegations contained in this lawsuit, [in] failing to properly service the loans, and in delaying any notification to [Cornerstone] of any problems with any loans sold to [Lehman] by [Cornerstone]." (*Id.* at 8).

---

77304, with a principal amount of $28,400. (Docket Entry No. 16, Ex. A).

[7]  Lehman describes the early-default provision as follows. "For prior-approved by the purchaser, the loan becomes an Early Payment Default if the borrower fails to make the first monthly payment due within 30 days of the payment's due date. For loans purchased pursuant to the seller's delegated underwriting authority, eligibile for delegated underwriting, or purchased in bulk transactions, the loan becomes an early payment default if the borrower fails to make the first or second monthly payment due within 30 days of each such monthly payment's respective due date." (Docket Entry No. 16 at ¶ 29).

[8]  Secured by property located at 405 Vernier Avenue, Lafayette, Colorado 80026, with a principal amount of $300,000. (Docket Entry No. 16, Ex. A).

[9]  Lehman alleges this loan is secured by property located at 1700 Agate Street, Maplewood, Minnesota 55117, with a principal amount of $176,400. (Docket Entry No. 16, Ex. A). Cornerstone denies making this loan. (Docket Entry No. 17 at ¶ 24).

4

Cornerstone's counterclaim is brief. It reads:

> Defendant is entitled to its attorneys fees and costs under Section 38.004 of the Texas Civil Practice and Remedy Code in that Plaintiff breached the contract by failing to properly service the loans and to give the required notice.[10]

(Docket Entry No. 17 at ¶ 64). Cornerstone did not assert–at least not explicitly–a counterclaim for breach of contract. In an earlier section, labeled "Affirmative Defenses," Cornerstone alleged:

> Defendant is not liable to Plaintiff because:
> . . .
>
> (j) Of breach of contract by Plaintiff in not providing required notice to Defendant of the allegations contained in this lawsuit, of failing to properly service the loans, and in delaying any notification of any problems with any loans sold to Plaintiff by Defendant.
> . . .

(*Id.* at ¶61).

In its motion to dismiss, Lehman argues that Cornerstone has not alleged facts sufficient to support a plausible claim for breach of contract and that because New York law governs, Cornerstone cannot recover under the Texas attorney's fees statute. (Docket Entry No. 22). Cornerstone complains that Lehman has not been sufficiently specific as to which loan purchase agreement governs the eleven mortgages at issue in this case. (Docket Entry No. 26). Cornerstone argues that it entered into similar (but not identical) loan purchase agreements with Lehman besides the December 31, 2004 Agreement. (Docket Entry No. 26 at 2, 3). Cornerstone contends that "at least one" of the other agreements "has a choice of law other than New York, while another has a specific provision for the recovery of attorneys (sic) fees." (*Id.* at 3). The December 31, 2004 Agreement is silent as to attorney's fees. (Docket Entry No. 22, Ex.1). Cornerstone argues that

---

[10] Cornerstone cited section 38.004 of the Texas Civil Practice and Remedies Code. This section clarifies when courts may take judicial notice of "the usual and customary attorney's fees." TEX. CIV. PRAC. & REM. CODE § 38.004. Section 38.001 is the provision making attorney's fees available in a breach of contract action. It appears that Cornerstone intended to refer to section 38.001. *See* TEX. CIV. PRAC. & REM. CODE § 38.001.

because it is possible that an agreement might apply that does not specify New York law or does provide for attorney's fees, the counterclaim should not be dismissed. (Docket Entry Nos. 17, 26).

## II. The Rule 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff–or a defendant asserting a counterclaim[11]–fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63 ("*Conley's* 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1974).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court set out a procedure for evaluating whether a complaint should be dismissed:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal

---

[11] Counterclaims and affirmative defenses are subject to the same pleading requirements as complaints. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999).

6

> conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1950.

This procedure requires the court to engage in a two-step analysis. First, the court should identify which statements in the complaint or counterclaim are factual allegations and which are legal conclusions. *See Iqbal*, 129 S. Ct. at 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). The *Iqbal* Court explained: "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, the court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *See id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (internal citation omitted) (quoting FED. R. CIV. P. 8(a)(2)).

The *Iqbal* Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). With respect to the "plausibility" standard described in *Twombly*, *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The *Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability

7

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In accordance with the pleading principles described in *Twombly* and elaborated on in *Iqbal*, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do' . . . ." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964–65); *see also In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965), *cert. denied*, 129 S. Ct. 1669 (2009). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1966).

When a party's pleading fails to state a claim, the court should generally give the pleader at least one chance to amend under Rule 15(a) before dismissing the claim with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that

8

they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a pleading if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

**III.    Analysis**

Cornerstone's counterclaim asserts a right to recover attorney's fees because of Lehman's contract breach. (Docket Entry No. 17). The allegations as to the breach are scant: "Plaintiff breached the contract by failing to properly service the loans and to give required notice"; and ". . . breach of contract by Plaintiff in not providing required notice to Defendant of the allegations contained in this lawsuit, of failing to properly service the loans, and in delaying any notification of any problems with any loans sold to Plaintiff by Defendant." (*Id.* at ¶¶ 61, 64).

To the extent Cornerstone alleges breach of contract, it fails to plead sufficiently under the standards that applied even before *Twombly* and *Iqbal*. Cornerstone has simply alleged that a contract was breached by a failure properly to service the loans and to give notice. This bare-bones allegation neither provides fair notice of the claim nor of the grounds on which it rests. Because the Rule 8 standard is not satisfied, dismissal with leave to amend under Rule 12 is appropriate.

9

To the extent Cornerstone alleges that it is entitled to recover attorney's fees under the Texas statute, the counterclaim fails to state a claim on which relief can be granted. Section 38.001 of the Texas Business and Commerce Code states in relevant part:

> A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:
> . . . .
> (8) an oral or written contract.

TEX. CIV. PRAC. & REM. CODE § 38.001. Section 38.001 does not provide an independent cause of action for attorney's fees. *Dalisa, Inc. v. Bradford*, 81 S.W.3d 876, 886 (Tex. App.–Austin 2002, no pet.) (Yeakel, J., dissenting) ("The majority is correct that neither section 37.009 nor section 38.001. . . recognizes a stand-alone action for attorney's fees."). The statute gives an additional remedy to a party with an already "valid claim." TEX. CIV. PRAC. & REM. CODE § 38.001. To obtain attorney's fees under section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995). Absent a valid breach of contract claim, as a matter of law, Cornerstone does not state a claim under section 38.001.

In addition, Cornerstone's counterclaim fails because it is based on a Texas statute that, based on the pleadings, does not apply. The December 31, 2004 Agreement and the Seller's Guide attached to Lehman's motion both contain choice-of-law provisions that specify New York law. (Docket Entry No. 22, Exs. 1, 2). Cornerstone's only argument is that "it is possible New York law would not apply." Cornerstone asserts that there may be another loan purchase agreement between the parties that does not choose New York law or provides for the prevailing party to recover its attorney's fees. Cornerstone also argues that the New York choice-of-law provision in the Seller's Guide attached to Lehman's motion should be disregarded because it might not be the same Seller's Guide identified in the Loan Purchase Agreement. (Docket Entry No. 26).

10

The basis of this suit is eleven mortgage loans that Lehman alleges Cornerstone originated between December 22, 2004 and February 13, 2007. (Docket Entry No. 16, Ex. A). Cornerstone's only argument that a different loan purchase agreement might apply was that "it is still unclear that [the December 31, 2004 Agreement] is the only relevant contract, in that at least one of the eleven allegedly offending loans predates [that Agreement]." (Docket Entry No. 26 at 3). Cornerstone admits originating ten of the eleven mortgages and subsequently selling them to LBB. (Docket Entry No. 17 at ¶¶ 19-23). All ten loans were originated in 2006 and 2007. Cornerstone denies that it was involved in the eleventh mortgage, which Lehman alleges was originated on December 22, 2004; Cornerstone asserts that it "is unable to find any evidence that it originated this loan or sold it to LBB." (*Id.* at ¶ 24). This is the only loan that originated before the Loan Purchase Agreement. The ten loans that Cornerstone made in 2006 and 2007 were necessarily sold after December 31, 2004, the date of the Loan Purchase Agreement. (*Id.*). Cornerstone has made no argument that, as to these ten loans, a different loan purchase agreement applies. The December 31, 2004 Loan Purchase Agreement specifies New York law. The Texas statute Cornerstone relies on does not apply.

Cornerstone did not plead that Texas law should apply or allege any facts in support of such a contention. (Docket Entry No. 17). Even in its response to the motion to dismiss, Cornerstone argued only that "it is *possible* that New York law would not apply" because "at least one of the written agreements between the parties has a choice of law other than New York." (Docket Entry No. 26 at 3, 7) (emphasis added). Cornerstone does not identify such an agreement or why it should apply here. Similarly, Cornerstone argues that there may be an agreement between the parties that "has a specific provision for the recovery of attorneys fees by the prevailing party in the event of a dispute." (*Id.* at 3). But Cornerstone provides no information about such an agreement or why it

11

would apply here. These speculative arguments do not provide a basis to conclude that Cornerstone has pleaded a claim for which relief could be granted.

## IV.     Conclusion

Lehman's motion to dismiss is granted. Cornerstone's counterclaim is dismissed with leave to amend no later than **September 25, 2009**.

SIGNED on August 31, 2009, at Houston, Texas.

_____
                Lee H. Rosenthal
              United States District Judge